IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRED SMITH | : | CIVIL ACTION |
| | : | NO. 05-525 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J. September 15, 2006

Before the Court is defendant University of Pennsylvania's motion for summary judgment in this employment discrimination claim (doc. no. 23). For the reasons set forth below, the motion for summary judgment will be granted.

**I. BACKGROUND**

Plaintiff, Fred Smith, an African-American male, brings this employment discrimination claim against his former employer, the University of Pennsylvania, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Plaintiff started working at the University of Pennsylvania's Faculty Club in 1992. On May 30, 1995, however, plaintiff sustained a work-related injury that kept him out of work for over eight years.

In July 1995, plaintiff filed an employment discrimination charge against defendant with the Equal Employment Opportunity Commission ("EEOC"). That charge was settled after

plaintiff brought a civil action against defendant.[1]

Plaintiff also filed a separate workers' compensation claim and collected workers' compensation until March of 2003, when the parties settled that claim. The written settlement agreement did not address whether plaintiff would be reinstated as an employee at the University of Pennsylvania. However, after defendant made the settlement payment to plaintiff, defendant requested that plaintiff voluntarily sign a resignation form. Plaintiff refused to sign the form.

On September 11, 2003, plaintiff's doctor cleared Plaintiff for full-time employment subject to certain restrictions.[2] Four days later, on September 15, 2003, plaintiff sought to return to his former employment with defendant. According to plaintiff, he met twice with Dennis Deegan, the Manager of Labor Relations at the University of Pennsylvania, who at first told plaintiff that "he'll see what he can do," but then later informed plaintiff that he was "trying hard to find

---

[1] Although it forms part of the basis of his current claim, plaintiff has provided no additional information about the 1995 discrimination claim. At his deposition, plaintiff state that he was "not permitted to say anything about that."

[2] Plaintiff's doctor, John J. Bowden, Jr., D.O., P.C., wrote in an undated letter that plaintiff was "released to return to full duty with restrictions" that included refraining "from any prolonged sitting, standing, no pushing, and no pulling and prolonged walking. No lifting over 15 pounds."

[plaintiff] something but he couldn't."[3] Pl.'s Dep. at 37-40. Plaintiff concedes that, at some point, Mr. Deegan informed him that the Faculty Club was closed in 1999. Id. At 158-59.

Defendant now states that at the time plaintiff sought reinstatement, it had in fact already closed the Faculty Club in August of 1999, at which time Hilton Hotels Corporation began to operate the facility as the Inn at Penn. Defendant further explains that when it closed the Faculty Club, it discharged all of the active full-time employees who were working there but provided them the opportunity to apply for a vacant position at either the University of Pennsylvania or at the new Inn at Penn.

After Mr. Deegan declined to reinstate plaintiff in another position, plaintiff contacted Councilman Michael Nutter, who subsequently wrote defendant inquiring as to the status of plaintiff's employment. Defendant responded to Councilman Nutter in a letter dated November 10, 2003, stating that plaintiff was "welcome" to reapply for any position at the University of Pennsylvania for which he was qualified, as the Faculty Club had ceased operations in his eight-year absence. Plaintiff did not reapply for another position because he believed he was already an employee of defendant.

Nearly six months later, on May 20, 2004, plaintiff

---

[3] Defendant asserts that Mr. Deegan denies ever making such statement but accepts as true plaintiff's averment to the contrary for the purposes of summary judgment. Def.'s Statement of Facts at 2, n. 1.

filed a charge of discrimination with the EEOC alleging that he was denied reinstatement to his former position at the Faculty Club by defendant in violation of Title VII of the Civil Rights Act and the Americans with Disabilities Act. Plaintiff alleged that defendant refused to allow plaintiff to return to work because plaintiff had filed a prior successful EEOC charge and discrimination lawsuit against defendant and because defendant did not want to provide plaintiff with an accommodation for his disability. Although plaintiff signed the original EEOC charge, nearly three months later, on August 4, 2004, plaintiff sent a letter to the EEOC to amend his EEOC charge to include a claim of discrimination based on race, alleging that the EEOC had mistakenly not included that claim in his initial complaint. On November 30, 2004, the EEOC issued a right-to-sue letter.

On February 4, 2005, plaintiff filed the instant action asserting two Title VII claims: (1) a claim of race discrimination, and (2) a claim of retaliation for engaging in a protected activity.[4] After a protracted period of discovery,[5]

---

4 Plaintiff's complaint does not allege discrimination under the Americans with Disabilities Act, although that allegation was included in his EEOC charge filed May 20, 2004.

5 Plaintiff has prolonged the adjudication of defendant's motion for summary judgment by filing several successive motions to compel discovery and two motions for a continuance under Rule 56(f). The Court granted the plaintiff's first motion to compel and motion for a continuance pursuant to Rule 56(f), and denied plaintiff's remaining two motions to compel and its second motion for a continuance under Rule 56(f) to permit further discovery.

defendant's motion for summary judgment is now ripe for consideration.

**II. DISCUSSION**

A. Standard for Summary Judgment.

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" only if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). An issue of fact is "genuine" only when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. In determining whether there exist genuine issues of material fact, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 305-06 (3d Cir. 2001) (citing Anderson, 477 U.S. at 248).

Although the moving party bears the burden of demonstrating the absence of a genuine issue of material fact, where the non-moving party is the plaintiff, who bears the burden

of proof at trial, that party must present affirmative evidence sufficient to establish the existence of each element of his case. Coregis, 264 F.3d at 306 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Accordingly, the plaintiff cannot rely on unsupported assertions, speculation or conclusory allegations to avoid the entry of summary judgment, see Celotex, 477 U.S. at 324, but rather, he "must go beyond the pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. U.P.S., 214 F.3d 402, 407 (3d Cir. 2000).

B. The McDonnell Douglas Paradigm.

In McDonnell Douglas Corp. v. Green, the Supreme Court created a three-step scheme for structuring the presentation of evidence in discriminatory treatment cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 et seq. 411 U.S. 792 (1973). Under the McDonnell Douglas scheme, the plaintiff first must "produce evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993)).

If the plaintiff succeeds in satisfying a prima facie case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the

employee's rejection." McDonnell Douglas, 411 U.S. at 802. Once the employer meets this relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden rebounds to the plaintiff, who must then show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion). Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

At the summary judgment stage, a plaintiff may "survive summary judgment ... by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." Id. at 764. As the Third Circuit has explained:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons." While this standard places a difficult burden on the plaintiff, "it arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the

private sector in economic affairs."

Id. at 765 (internal citations omitted).

Finally, "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion "remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Tex. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

C. Plaintiff's Retaliation Claim.

Plaintiff alleges he was terminated in retaliation for filing an EEOC charge in 1995. To establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in a protected activity; (2) he was discharged subsequent to or contemporaneously with that protected activity; and (3) there is a causal link between the protected activity and his termination. Woodson v. Scott Paper Corp., 109 F.3d 913, 920 (3d Cir. 1997). The McDonnell Douglas paradigm applies to a claim of retaliation. Id.

Here, plaintiff's proofs successfully establish only two out of the three elements of a prima facie case of retaliation. Plaintiff engaged in a protected activity when he filed an EEOC charge in 1995 for a charge of racial discrimination. Plaintiff also filed a lawsuit for employment

discrimination that was later settled by the parties. Moreover, plaintiff was discharged subsequent to his protected activity of filing the EEOC charge and civil lawsuit.[6] Therefore, the first and second prima facie elements of plaintiff's retaliation claim are satisfied.

Plaintiff has not shown, however, the causal link between his protected activity and his termination which is necessary to make out a prima facie case of retaliation. Over eight years lapsed between plaintiff's protected activity and his alleged adverse employment action (i.e., defendant's failure to reinstate employment, during which time plaintiff had no contact with defendant regarding the status of his employment. Although passage of time alone does not insulate the employer from liability, where enough time has passed to make improbable any

---

6 The parties disagree as to when precisely plaintiff ceased to be under the employ of defendant. Plaintiff alleges that he remained an employee until he attempted to return to work in September 2003. He asserts that he first learned that he was discharged through the letter of November 25, 2003 in which defendant welcomed plaintiff to apply for another position. Plaintiff argues that defendant implicitly acknowledged that he was still an employee as late as 2003 when, after it had settled plaintiff's workers' compensation claim and made the settlement payment to him, defendant requested that plaintiff sign a form stating his resignation from employment. Defendant, on the other hand, appears to contend that plaintiff should have long known that he ceased to be an employee because his medical benefits were terminated in 1996 and he never contacted anyone while he was on leave to determine the status of his employment. Def.'s Statement of Facts at ¶¶ 17-18. Regardless of whether plaintiff was discharged in 1996 or 2003, however, it is undisputed that he was discharged sometime <u>after</u> he engaged in the protected activity in 1995.

causal nexus between the protected activity and the alleged retaliation, plaintiff must be able to show that "the employer engaged in a pattern of antagonism in the intervening period." Woodson, 109 F.3d at 920 (citing Robinson v. SEPTA, 982 F.2d 892, 894-895 (3d Cir. 1993)).

In Robinson, for example, the plaintiff filed a grievance and claim in 1984 under the Pennsylvania Human Relations Act ("PHRA") alleging race discrimination; almost two years later, he was terminated from his position. 982 F.2d at 895. During that two-year intervening period, however, there was evidence of a pattern of harassment consisting of plaintiff's supervisors "repeatedly disciplining him for minor matters, miscalculating his points for absences from work, and generally trying to provoke Robinson into insubordination." Id. The trial judge entered judgment in favor of plaintiff and defendant appealed. Id. On appeal, the Third Circuit found that the "series of events" that occurred after plaintiff filed his PHRA complaint were sufficient to show that his PHRA complaint was "causally linked to his termination" two years later. Id. The Third Circuit Court of Appeals affirmed judgment for the plaintiff, but cautioned that "[t]he temporal proximity noted in other cases ... is missing here and we might be hard pressed to uphold the trial judge's finding were it not for the intervening pattern of antagonism that [defendant] demonstrated." Id.

In Woodson, the court similarly found a "pattern of antagonism" between the protected activity and termination to serve as a causal link in support of retaliation. The pattern included:

> Scott's 'setting Woodson up to fail' by hiring him as a product system leader in the poorly performing napkin division and then refusing to provide him with adequate resources; Scott's failure to respond appropriately to racist graffiti in its plant; and Scott's termination of Woodson pursuant to a 'sham' ranking process performed by individuals who were not familiar with his employment record, but only with his charges of discrimination.

109 F.3d at 921. Although the plaintiff in Woodson had filed his administrative complaints in February 1990 and was terminated in 1992, the "pattern of antagonism" described above supported the causal link required in a retaliation case where a close temporal proximity is lacking. Id.

Here, to the contrary, plaintiff has not only offered no evidence that he was subject to a "pattern of antagonism" during the eight years between 1995 and 2003, but he has failed to show any antagonism at all. At most, plaintiff cites the dispute over his worker's compensation claim as evidence of retaliation against him.[7] However, a single dispute with an

---

[7] The only reference to any alleged harassment from plaintiff's worker's compensation claim is contained in plaintiff's response to defendant's statement of facts:

> Penn vigorously contested my workers'

employer regarding a workers' compensation claim over an eight-year period does not amount to a the "pattern of antagonism" present in Robinson or Woodson. Plaintiff has thus failed to demonstrate a causal link between his EEOC claim and his subsequent termination.

Even if plaintiff was able to make out a prima facie case of retaliation, however, defendant has articulated a legitimate, non-discriminatory reason for terminating plaintiff which plaintiff has not discredited as mere pretext. To the contrary, defendant points out that while plaintiff was disabled it closed the entire Faculty Club and eliminated all of the positions at the Faculty Club, including plaintiff's position. Moreover, the fact that plaintiff was out on disability when defendant eliminated all the positions at the Faculty Club does not warrant his receiving special treatment over and above the treatment that all other Faculty Club employees received when defendant terminated their positions. See In re Carnegie Center

---

> compensation claim by, among other things, requiring me (1) to undergo four IME's, (2) to get a lawyer to obtain the many favorable rulings from workers' compensation judges that were necessary to force Penn to continue to pay workers' compensation benefits to me, and (3) to undergo lengthy and hard negotiations to finally reach a settlement of my workers' compensation claim.

See Pl.'s Ans. to Def.'s Statement of Facts at ¶ 33.

Associates, 129 F.3d 290 (3d Cir. 1997 (where defendant eliminated a number of positions, including plaintiff's while she was on maternity leave, defendant's assertion that economic considerations necessitated a reduction in force constituted a legitimate, non-discriminatory reason for terminating plaintiff).[8]

Based on the uncontested facts, the Court concludes that plaintiff has failed to provide sufficient evidence from which a fact finder could reasonably disbelieve defendant's stated reasons for terminating him or find that defendant was more likely than not motivated by retaliatory animus. Fuentes, 32 F.3d at 765. Thus, summary judgment is appropriate on plaintiff's retaliation claim.

---

[8] Defendant cites cases holding that a "reduction in force" can be a legitimate, non-discriminatory reason to discharge an employee. Neither party has previously argued that closing the Faculty Club constituted a "reduction in force," as defined in the Third Circuit, and therefore the Court need not address whether plaintiff has made a prima facie case for such a claim. This is not the kind of case where an employer has laid off a group of employees who are part of a protected class while retaining others, based on a rating system that uses subjective criteria. See, e.g., Tomasso v. Boeing Co., 445 F.3d 702, 710 (3d Cir. 2006) (plaintiff created a genuine issue of material fact as to whether "reduction in force" was a pretext to defendant laying him off due to his age). However, even if this were a reduction in force case, plaintiff could not make out a prima facie case as he has not shown that when he was terminated "persons outside of the protected class were retained." Armbuster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994).

D. Plaintiff's Claim of Race Discrimination.

1. Exhaustion

As a threshold matter, defendant argues that plaintiff's claim of race discrimination is time-barred because plaintiff failed to file his amended claim within three hundred days after the alleged unlawful employment practice occurred.

A charge of discrimination filed with a state agency must be "filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The Third Circuit has held that federal courts will only entertain a discrimination claim that was not expressly alleged to an administrative agency if "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC charge, or the investigation arising therefrom. Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984) (where plaintiff filed a Title VII suit for retaliation, and earlier EEOC charge also alleged retaliation, the court determined that the Title VII allegations were fairly within the scope of the EEOC charge).

In this case, plaintiff filed his charge with the EEOC on May 20, 2004. On August 5, 2004, plaintiff sent a letter to the EEOC stating that his charge was "incomplete and written in such a way that it is subject to several inaccurate interpretations." See Aug. 5, 2004 Letter to EEOC (Def.'s

Statement of Facts at Ex G). Plaintiff attached to the letter an "amended Charge of Discrimination," that included the new allegations of race discrimination. Id. Plaintiff claims that "the person who wrote up my Charge ... must not have understood what I was saying," because he included allegations of race discrimination in his initial EEOC charge. Id.

In his May 20, 2004 EEOC charge, plaintiff lists the date the discrimination took place as September 15, 2003. EEOC Form 5 (Def.'s Statement of Facts at Ex F). In his "amended Charge," plaintiff states "[r]espondent's racial discrimination against me started when respondent hired me in or around 1991 or 1992. The most recent act of discrimination took place on or about September 15, 2003." Aug. 5, 2004 Letter to EEOC (Def.'s Statement of Facts at Ex G). By either account, the three-hundred-day period within which the charge had to be filed began to run on September 15, 2003 and lapsed on July 12, 2004.

Here, defendant argues that plaintiff's race discrimination claim is not fairly within the scope of his EEOC claim, and that plaintiff's attempt to amend his EEOC claim on August 5, 2004 was barred under the 300-day statute of limitations, which expired on July 12, 2004. Defendant cites in support of its argument the case of Antol v. Perry, 82 F.3d 1291, 1295-96 (3d Cir. 1996). In that case, the Third Circuit applied Waiters to find plaintiff's claim of gender discrimination barred

because it was not fairly within the scope of his initial EEOC claim that based on disability discrimination. Id. at 1296. ("The [EEOC] investigation focused, quite properly we think, on the gravamen of Antol's complaint--disability discrimination. Neither the EEOC nor the agency were put on notice of a gender discrimination claim.")

Plaintiff's original May 20, 2004 EEOC charge did not include an allegation of race discrimination. Plaintiff has attempted to cure this deficiency by alleging that the EEOC bears full responsibility for leaving out his claim of race discrimination and pointing out that he filed an "amended Charge" that included such a claim.

Plaintiff cannot absolve himself of responsibility so easily. Plaintiff attested as to the accuracy of the original EEOC charge when he signed it on May 20, 2004.[9] He has not explained why he did not correct the EEOC charge on May 20, 2004 when he signed the typed form; nor does he explain the reason for his three-month delay in amending his charge to include a claim of race discrimination. Nor has plaintiff shown how his race discrimination claim is reasonably related to or fairly within the scope of his disability and retaliation claims.

---

[9] Above the signature block where plaintiff signed his name on the EEOC charge on May 20, 2004 appears the following language: "I declare under penalty of oath that the above is true and correct."

Under the circumstances, plaintiff's attempt to amend his EEOC charge on August 5, 2004 was beyond the statutory time provided by 42 U.S.C. § 2000e-5(e)(1) and does not justify this Court allowing him to bring such a claim now. His failure to allege race discrimination in his original EEOC charge bars his ability to now bring a race discrimination claim in this court. See Waiters, 729 F.2d at 237; Antol, 82 F.3d at 1296.

2. Prima facie case

Even if plaintiff's race discrimination claim was timely, however, plaintiff has failed to make out a prima facie case of race discrimination as required under the McDonnell Douglas paradigm. Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) other employees who are not members of a protected class were treated more favorably or he was discharged under circumstances giving rise to an inference of unlawful discrimination. Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318019 (3d Cir. 2000); Rotteveel v. Lockheed Martin Corp., No. 01-6969, 2003 U.S. Dist. LEXIS 12329, at *19-20 (E.D. Pa. July 15, 2003).

Plaintiff has satisfied the first three elements of his prima facie case but fails once again to establish the last element. Plaintiff is a member of a protected class, as plaintiff is African-American. He suffered an adverse employment

action when he was not allowed to resume his employment with defendant. Moreover, there has been no dispute over plaintiff's qualifications for his job at the Faculty Club. Therefore, the only issue before the Court with respect to plaintiff's prima facie claim of race discrimination is whether other employees who are not African-American were treated differently or whether the circumstances of plaintiff's termination give rise to an inference of discrimination.

Plaintiff has not provided a scintilla of evidence that other individuals who are not African-American were treated differently than plaintiff when defendant closed the Faculty Club. Defendant discharged all Faculty Club employees and required all of them to reapply for a position with defendant or the Inn at Penn regardless of their race. Defendant treated plaintiff the same as other Faculty Club employees. Even after defendant provided plaintiff during discovery with a list of all EEOC and PHRC complaints filed by non-professional employees against defendant dating back to January 1, 2000, plaintiff has been unable to point to one employee outside of his protected class that defendant treated differently. Indeed, Plaintiff can point to no evidence that plaintiff was discharged under circumstances giving rise to an inference of unlawful racial discrimination.

Finally, for the same reasons that plaintiff cannot

establish that defendant's legitimate, non-discriminatory reason for not returning him to work was a pretext for retaliation, plaintiff cannot establish that this reason was a pretext for racial discrimination. Defendant closed the Faculty Club while plaintiff was out on disability. Plaintiff did not reapply for a position with defendant in 2003 after he was cleared by his medical doctor to seek employment under certain conditions again. See Pl.'s Ans. to Def.'s Statement of Facts at ¶ 14.

Based on the uncontested facts, the Court concludes that plaintiff has failed to provide sufficient evidence from which a fact finder could reasonably disbelieve defendant's stated reasons for terminating him or find that defendant was more likely than not motivated by racial discrimination. Fuentes, 32 F.3d at 765. Thus, summary judgment is appropriate on plaintiff's racial discrimination claim.

**III. CONCLUSION**

For the reasons set forth above, the motion for summary judgment will be granted.

An appropriate order will be entered.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRED SMITH | : | CIVIL ACTION |
| | : | NO. 05-525 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| | : | |
| Defendant. | : | |

**ORDER**

**AND NOW,** this **15th** day of **September, 2006,** it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (doc. no. 23) is **GRANTED.**

**IT IS FURTHER ORDERED** that **JUDGMENT** shall be entered in favor of defendant and against plaintiff.

**IT IS FURTHER ORDERED** that the case shall be marked **CLOSED.**

**AND IT IS SO ORDERED.**

**S/Eduardo C. Robreno**
**EDUARDO C. ROBRENO, J.**